CULPEPPER IP, LLLC
Kerry S. Culpepper, Hawaii Bar No. 9837, *pro hac vice*
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:  kculpepper@culpepperip.com

Attorney for Plaintiffs:
Trial Film, LLC;
American Cinema Inspires, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trial Film, LLC; American Cinema Inspires, Inc., | No.: CV-2:21- |
| Plaintiffs, | **COMPLAINT; EXHIBITS 1-3; DECLARATION OF JOSHUA LEE;** |
| vs. | |
| Wu Daoai; Cheng Hsien Yang; Yuan Niu; and Doe a/k/a Win Double, | **(1) DIRECT COPYRIGHT INFRINGEMENT** |
| Defendants. | **(2) DMCA VIOLATIONS** |

## **COMPLAINT**

Plaintiffs Trial Film, LLC ("Trial Film") and American Cinema Inspires, Inc. ("ACI") (collectively: "Plaintiffs") files this Complaint against Defendants Wu Daoai, Cheng Hsien Yang, Yuan Niu, and Doe a/k/a Win Double ("Defendants")

and allege as follows:

## I.      NATURE OF THE ACTION

1.      Plaintiffs bring this action in response to Defendants' rampant streaming of its motion picture *Infidel* ("Work") from multiple piracy websites without authorization.

2.      Plaintiffs bring this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and allege that: Defendants are liable for direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501, and further under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 and allege that Defendant Yuan Niu is liable for violating the integrity of their copyright management information ("DMCA violations").

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over Defendants.

5.     Defendants own and operate multiple piracy websites located in this District that streamed unauthorized copies of Plaintiffs' Work.

6.     Upon information and belief, Defendants' piracy websites are hosted on servers of Arizona based website host providers in Arizona.

7.     Upon information and belief, Defendants registered the domain names for their piracy websites with Arizona based domain registrars.

8.     Defendant Wu Daoai ("Daoai") owns and operates websites including 17ys.net, mmov.cc, 52ys.tv, and tvju.tv.

9.     Defendant Cheng Hsien Yang ("Yang") owns and operates websites including 17drama.org, 92-tv.com, 92-tv.xyz, and 94-tv.xyz.

10.    Defendant Yuan Niu ("Niu") owns and operates the website awsltv.com.

11.    Defendant Doe a/k/a Win Double ("Doe") owns and operates the website msyy.cc.

12.    Defendants stream copies of the Work without authorization on each of their websites in violation of Plaintiff Trial Film's exclusive rights of reproduction, display, public performance and to make derivative works.

13.    Defendant Yang's websites also provide multiple links under each of Defendant Yang's domains, each reproducing Plaintiffs' Work and making the Work available for public display and public performance or automatically directing

to another one of Defendant Yang's websites which reproduces Plaintiffs' Work making the Work available for public display and public performance. *See* Exhibit "3".

14.     Defendants receive financial compensation from advertisements on Defendants' websites from visitors in Arizona and the United States.

15.     Defendant Doe's website generates cookies for Baidu to generate advertisements tailored to visitors from Arizona and the United States.

16.     Defendant Daoai's websites generate cookies and trackers for Google Analytics to generate advertisements tailored to visitors from Arizona and the United States.

17.      Defendant Yang's websites generate cookies and trackers for Google Analytics to generate advertisements tailored to visitors from Arizona and the United States.

18.     Defendant Niu's websites generate cookies and trackers for chatra.io and crestfallenwall.com and Google Analytics to generate advertisements tailored to visitors from Arizona and the United States.

19.     Defendant Daoai uses the domain registrar and hosting service of NameSilo, LLC ("NameSilo"), a company with its principal place of business in Arizona.

20.     Defendant Daoai hosts and physically stores the infringing material on

servers of NameSilo in Arizona.

21.   Additionally, by agreeing to services by NameSilo, Defendant Daoai has agreed to be subject to personal jurisdiction in this District.



22.   Defendant Yang and Defendant Niu use the domain registrar and hosting service of Namecheap, Inc. ("Namecheap"), a company with its principal place of business in Arizona.

23.   Defendant Yang and Defendant Niu hosts and physically stores the infringing material on servers of Namecheap in Arizona.

24.   Additionally, by agreeing to services by Namecheap, Defendants Yang and Niu have agreed to be subject to personal jurisdiction in this District.

🔒 namecheap.com/legal/universal/universal-tos/

of that jurisdiction, if and to the extent those local laws are applicable and do not conflict with U.S. Export Laws. If such laws conflict with U.S. Export Laws, You shall not access this site or Our Services. The obligations under this section shall survive any termination or expiration of this Agreement or Your use of this site or Our Services.

24. **Compliance with Local Laws.**

Namecheap makes no representation or warranty that the content available on this site or the Services We offer are appropriate in every country or jurisdiction, and access to this site or Our Services from countries or jurisdictions where its content is illegal is prohibited. Users who choose to access this site or use Our Services are responsible for compliance with all local laws, rules and regulations.

25. **Governing Law; Jurisdiction; Waiver of Trial By Jury.**

Except as otherwise set forth in the UDRP or any similar policy with respect to any dispute regarding the Services provided under this Agreement, Your rights and obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Arizona. You agree that any action to enforce this agreement or any matter relating to Your use of the Services must be brought exclusively in the United States District Court of Arizona, or if there is no jurisdiction in such court, then in a state court in Maricopa County, State of Arizona. You agree to waive the right to a trial by jury in any action or proceeding that takes place relating to or arising out of this Agreement.

25.     Defendant Doe uses the domain registrar and hosting service of GoDaddy.com, LLC ("GoDaddy"), a company with its principal place of business in Arizona.

26.     Defendant Doe hosts and physically stores the infringing material on Defendant Doe's website on servers of GoDaddy in Arizona.

27.     Additionally, by agreeing to services by GoDaddy, Defendant Doe has agreed to be subject to personal jurisdiction in this District.

↻ 🔒 godaddy.com/legal/agreements

🄳 **GoDaddy**     Name & Protect    Build & Grow    GoDaddy Pro                                    Help Center

## GoDaddy Legal Agreements and Policies

This page contains links to current corporate policies as well as agreements for the products and services available through GoDaddy. To view any of the documents presented on this page, click on the policy/agreement.

Terms.

(N) Exclusive Venue for Other Controversies. GoDaddy and you agree that any controversy excluded from the dispute resolution procedure and class action waiver provisions in this Section (other than an individual action filed in small claims court) shall be filed only in the Superior Court of Maricopa County, Arizona, or the United States District Court for the District of Arizona, and each party hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of such courts for any such controversy. You also agree to waive the right to trial by jury in any action or proceeding.

28.   In the alternative, this Court has jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiffs' claims arise under federal law; (2) the Defendants purposely directed their electronic activity into the United States ("US") and target and attract a substantial number of users in the US; (3) Defendants do so with the manifest intent of engaging in business or other interactions with the US; (4) Defendants are not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the US Constitution and laws.

29.   Defendants cause harm to Plaintiffs' business within the US by diverting customers in the US to unauthorized Internet-based content through, at least, Defendants' websites.

30.   Defendant's websites are interactive by collecting log files including the Internet Protocol ("IP") address, Internet Service Provider ("ISP") and browser type of each user who visits Defendants' interactive websites. This allows Defendants to track website visitors and utilize cookies and web beacons to store information such as personal preferences of users who visit their websites.

31.   Upon information and belief, Defendants copied Plaintiffs' Work without authorization from a legitimate source in the US, such as a US region Blu-Ray disc or from a streaming service such as the US company Amazon.com, Inc.

32.     Defendants' illicit conduct and subsequent personal financial gains are directly related to Plaintiffs' harm in the US.

33.     Defendants directly target US viewers and draw a substantial share of their website traffic from the US.

34.     Over 13,000 users from the US visited Defendant Daoai's website 17ys.net over the past 6 months.

35.     Defendant Daoai purposely uses US based services for operating Defendant Daoai's websites, including the domain registrar and hosting service of NameSilo (AZ), the email service of Google, LLC (CA), and the payment services of PayPal, Inc. (CA) to pay for these services for the continued operation of Defendant Daoai's websites.

36.     Defendant Yang purposely uses US based services for operating Defendant Yang's websites, including the hosting service of Namecheap (AZ), the email service of Google (CA), and the payment services of Visa, Inc. (CA) to pay for these services for the continued operation of Defendant Yang's websites.

37.     Defendant Niu purposely uses US based services for operating Defendant Niu's website, including the hosting services of Namecheap (AZ), the email service of Google (CA), and the payment services of PayPal (CA) to pay for these services for the continued operation of Defendant Niu's website.

38.     Defendant Doe also purposely uses US based services for operating

Defendant Doe's website, including the domain registrar and hosting services of GoDaddy (AZ) and the email services of Google (CA).

39.   Defendants also purposely use the nameserver services of the California company Cloudflare, Inc. ("Cloudflare"), a business incorporated in California to accelerate the website speed to deliver content to traffic originating from the US.

40.   Defendants agreed to be subject to jurisdiction in the US, specifically to courts in California, when agreeing to terms of services with Cloudflare for nameserver service.



41.   Defendants agreed to terms of services with Cloudflare that required Defendants to "…represent and warrant that Your Information does not infringe,

violate, or misappropriate any third-party right, including any copyright…or any other intellectual property or proprietary right." Paragraph 2.5.4, https://www.cloudflare.com/terms/ [last accessed on May 3, 2021].

42.     Defendants further agreed to terms of services with Cloudflare that required Defendants to "…agree to defend, indemnify, and hold harmless Cloudflare…from and against any and all claims…arising out of or in any way connected with your access to, use of, or alleged use of the Service; (ii) your violation of this Agreement or any representation, warranty, or agreements referenced herein, or any applicable law or regulation; (iii) your violation of any third-party right, including without limitation any intellectual property right…" *Id.* at 10.2.

43.     As a copyright holder, Plaintiffs are third-party beneficiaries of the Defendants' agreements with Cloudflare. Plaintiffs' claims for direct infringement arise out of Defendants' breach of the terms of service with Cloudflare.

44.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) although Defendants are not residents of the United States, they may be sued in this District.

### III.   PARTIES

### A.   The Plaintiff

45.    The Plaintiff Trial Film is the owner of the copyrights for the Work as shown in Exhibit "1".

46.    Trial Film is a limited liability company registered under the laws of the State of Delaware and having a principal office in San Diego, California.

47.    Plaintiff ACI is a corporation organized under the laws of California and having a principal office in Van Nuys, California.

48.    ACI is an affiliate of American Cinema International, Inc., a production company with a notable catalog of major motion pictures.

49.    Trial Film is the owner of the Work *Infidel*.  The Work is a motion picture released in 2020 that tells the story of a political thriller involving a government official who tries to save a journalist after being kidnapped and put on trial for espionage in Iran.

50.    Trial Film engaged ACI to be the sales agent for licensing and exploiting of Trial Film's exclusive rights in the Work.

51.    ACI is a beneficial owner of the Work.

## B.   The Defendant

52.    Upon information and belief, Defendant Daoai is an adult individual residing in Taiwan.

53.    Defendant Daoai owns and operates at least the websites 17ys.net, mmov.cc, 52ys.tv, and tvju.tv which each featured unauthorized copies of Plaintiffs'

Work for public display and performance.

54.     In response to a Digital Millennium Copyright Act ("DMCA") subpoena, NameSilo has indicated that the true name of the registrant for the websites mmov.cc, 52ys.tv, and tvju.tv is Wu Daoai and that the name of the registrant for 17ys.net is Bo Ye.

55.     Upon information and belief, Bo Ye is an alias used by Defendant Daoai to conceal his nefarious activities.

56.     According to NameSilo, the telephone number and point of contact for all of websites 17ys.net, mmov.cc, 52ys.tv, and tvju.tv are the same.

57.     In response to a DMCA subpoena, Cloudflare confirmed that the true name of the owner of domains 17ys.net, mmov.cc, 52ys.tv, and tvju.tv is Wu Daoai.

58.     Defendant Daoai uses multiple email addresses to operate and fund the websites.

59.     Although Defendant Daoai uses "Wu Daoai" as the contact name across these services, it is likely that "Wu Daoai" is also a fictional name.

60.     Upon information and belief, Defendant Yang is an adult individual residing in Taiwan.

61.     Defendant Yang owns and operates at least the websites 17drama.org, 92-tv.com, 92-tv.xyz, and 94-tv.xyz which each featured unauthorized copies of Plaintiffs' Work for public display and performance.

62.     In response to a DMCA subpoena, Cloudflare confirmed that the true name of the owner of domains 17drama.org, 92-tv.com, 92-tv.xyz, and 94-tv.xyz is Cheng Hsien Yang.

63.     In response to a DMCA subpoena, Namecheap indicated that the true name of the owner of domains 17drama.org, 92-tv.com, 92-tv.xyz, and 94-tv.xyz is "Andy Yang".

64.     The address information used for Namecheap's services under "Andy Yang" and the address information used for Cloudflare's services under "Cheng Hsien Yang" are the same.

65.     Thus, it is highly likely that "Cheng Hsien Yang" and "Andy Yang" is the same individual.

66.     Defendant Yang also uses multiple email addresses to operate and fund the websites.

67.     Though Defendant Yang uses "Cheng Hsien Yang" and "Andy Yang" as the contact name across these services, it is likely that those names are fictional.

68.     Upon information and belief, Defendant Niu is an adult individual residing in Canada.

69.     Defendant Niu owns and operates at the least the website awsltv.com, which features unauthorized copies of Plaintiffs' Work for public display and performance.

70.     In response to a DMCA subpoena, Namecheap indicated that the domain awsltv.com is owned by "Yuan Niu".

71.     Upon information and belief, Defendant Doe is an adult individual residing in China.

72.     Defendant Doe owns and operates at least the website msyy.cc, which features unauthorized copies of Plaintiffs' Work for public display and performance.

73.     In response to a DMCA subpoena, GoDaddy indicated that the domain msyy.cc was created by the name "Win Double" with contact information in Fu Zhou, China. The contact information for the domain was later transferred to name "A Tom" with the contact address listed as "hhgg, Vermont 35401".

74.     Despite transferring the domain under a different email and name, the phone number and payment method remained the same.

75.     Upon information and belief, the msyy.cc domain is owned and operated by the same individual who regularly creates false names and contact information to avoid detection.

76.     Defendant Doe uses multiple email addresses to operate and fund the websites.

## IV.   JOINDER

77.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs was properly

joined because, as set forth in more detail below, the Plaintiffs assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Plaintiffs will arise in the action.

78.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants are properly joined because Plaintiff asserts a right to relief rising out of the same transaction, occurrence, or series of transactions or occurrences; namely the Defendants ripping a copy of Plaintiffs' Work from a legitimate US copy and streaming copies of the Work using the DNS service of Cloudflare, and there are common questions of law and fact, including the use of the same services such as Cloudflare to commit these infringements.

## IV.    FACTUAL BACKGROUND

### A.   The Plaintiffs Own or are Beneficial Owners of the Copyrights to the Work

79.     The Plaintiff Trial Film is the producer of the Work and the owner of the copyrights in the Work.  The Work is the subject of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

80.     Trial Film engaged ACI to be its exclusive sales agent in certain territories for licensing and exploiting Trial Film's exclusive rights in the Work.

81.     ACI is a beneficial owner of the Work.

82.    The Work was published as a motion picture and is currently offered for sale in commerce.

83.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the Work which bore proper copyright notices.

84.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the Work, and packaging and copies, each of which bore a proper copyright notice.

**B. Defendants Reproduced a copy of Plaintiffs' Work by ripping a copy to be streamed on their Websites.**

85.    Defendants use a process referred to as "ripping" to create a copy of the Work from either US region Blu-ray discs or US legal streaming services to upload onto Defendants' websites.

86.    Defendants infringe Plaintiffs' exclusive right of reproduction by ripping copies of the Work from US sources.

87.    Defendants infringe Plaintiffs' exclusive right of reproduction by uploading ripped copies of the Work to their websites.

**C. Defendants prepared derivative copies of the Work from the ripped copies.**

88.    Defendants prepared their own Chinese translation of the dialogue in the Works.

89.     Defendants encoded Chinese subtitles base upon their own translation in the ripped copies of the Work.

### D. Defendants publicly perform copies of the Work from the ripped copies.

90.     Defendants streamed copies of Plaintiffs' Work including the Chinese subtitles from their websites.  *See* Exhibit "2"; Decl. of Joshua Lee at ¶¶10-13.



91.     Each of Defendants' websites features unauthorized copies of Plaintiffs' Work.

92.     Plaintiff did not authorize, permit, or provide consent to the

Defendants to copy, reproduce, redistribute, perform, display or make derivative copies of its Work.

**E. Defendant Niu altered the Copyright Management Information without the authority of Plaintiffs.**

93.     17 U.S.C. § 1202(a)(1) defines copyright management information ("CMI") by an exemplary list of information conveyed in connection with performances or displays of the work.

94.     A legitimate copy or stream of the Work includes CMI such as an identification of ACI.

95.     Defendant Niu modified the stream to include identification of a website "www.458028.com" which, upon information and belief, redirects to another piracy website and an illegal gambling website.

96.     Plaintiffs did not give Defendant Niu authorization to include the name of this website in copies of the Work.

97.     The identification of the website Defendant Niu modified the stream to include is false copyright management information.

98.     Defendant Niu knowingly and willfully modified the copy to include the name of this website to induce, enable and facilitate further infringement of the Work by driving traffic to the website and increase his own profit.

**F. Defendant Niu publicly performed copies of the Work knowing that the**

***Copyright Management Information had been altered without the authority of Plaintiffs.***

99.   Defendant Niu streams copies of the Work from his website https://www.awsltv.com/vodplay/232225-1-1.html that include the identification of his piracy website "www.458028.com".

100.   Plaintiffs did not give Defendant Niu authorization to stream the Work with an identification of the name of this website.

101.   Defendant Niu knowingly and willfully publicly performed copies of the Work by streaming knowing that the copyright management information had been modified to include the name of this website to induce, enable and facilitate further infringement of the Work by driving traffic to the website and increase his own profit.

102.   Defendant Niu's act of streaming the Work with an identification of the name of this website degrades the reputation of Plaintiffs by associating their Work with piracy and illegal gambling.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

103.   Plaintiffs re-allege and incorporates by reference the allegations contained in each of the foregoing paragraphs.

104.   Plaintiff Trial Film is the copyright owner of the Work which contains an original work of authorship.

105.   Plaintiff ACI is a beneficial owner of the Work.

106.   Defendants copied and reproduced the constituent elements of the Work when ripping a copy for their websites.

107.   Defendants copied and reproduced the constituent elements of the Work when uploading the ripped copy to their websites.

108.   Defendants made derivative copies of the Work by adding Chinese subtitles to the ripped copy for their websites.

109.   Defendants also publicly performed and displayed the copyright protected Work.

110.   Plaintiffs did not authorize, permit, or provide consent to Defendants to copy, reproduce, redistribute, perform, display or make derivative copies of its Work.

111.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to reproduce its Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

112.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive right to prepare derivative Works based upon its copyright protected Work, in violation of 17 U.S.C. §§ 106(2) and 501.

113.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to perform its Work publicly, in violation of 17 U.S.C. §§ 106(4)

and 501.

114.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to display its Work publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

115.   By ignoring the proper copyright notice on Plaintiffs' Work, Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

116.   Plaintiffs have suffered damages that were proximately caused by Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of the copyright.

117.   Plaintiffs are entitled to costs and reasonable attorneys' fees.

## V. SECOND CLAIM FOR RELIEF

### (DMCA Violations against Defendant Niu only)

118.   Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs.

119.   Violations of the provisions of 17 U.S.C. § 1202 are referred to as DMCA violations.

120.   Defendant Niu knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work provided

copyright management information ("CMI") that falsely included the wording "www.458028.com" in violation of 17 U.S.C. § 1202(a)(1).

121.   Defendant Niu intentionally removed or altered CMI that included "American Cinema Inspires" to include "www.458028.com" in violation of 17 U.S.C. § 1202(b)(1) having reasonable grounds to know, or knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work.

122.   Defendant Niu publicly performed the Work knowing that CMI has been removed or altered to include "www.458028.com" without the authority of Plaintiffs in violation of 17 U.S.C. § 1202(b)(3) having reasonable grounds to know, or knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work intentionally.

123.   Particularly, the Defendant Niu knew that the CMI in the Work had been altered to include wording such as "www.458028.com" without authority of Plaintiffs.

124.   Defendant Niu knew that the wording associated with websites that have no relationship with Plaintiffs and are not the author of the Work.

125.   Defendant Niu knew that the wording would degrade the reputation of Plaintiffs by associating the Work with piracy and illegal gambling.

126.   Defendant Niu's acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

127.   Plaintiffs are entitled to an injunction to prevent Defendant Niu from engaging in further violations of 17 U.S.C. § 1202.

128.   Plaintiffs are entitled to recover from Defendant Niu the actual damages suffered by Plaintiffs and any profits Defendant has obtained as a result of her wrongful acts such as advertisement profits that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendant has realized by her violations of 17 U.S.C. § 1202.

129.   Plaintiffs are entitled to elect to recover from Defendant Niu statutory damages for his violations of 17 U.S.C. § 1202.

130.   Plaintiffs are further entitled to costs and reasonable attorneys' fees from Defendant Niu.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining Defendants from continuing to infringe the Plaintiffs' copyrighted Work and violating the integrity of the copyright management information of the Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that CloudFlare, Namecheap, GoDaddy, NameSilo, and any other service provider

providing service Defendants used to infringe Plaintiffs' Work immediately cease said service;

(C) award the Plaintiffs actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages of $150,000 pursuant to 17 U.S.C.  § 504-(a) and (c) against each of Defendants for a total of $600,000;

(D) award the Plaintiffs maximum statutory damages of $25,000 pursuant to 17 U.S.C. §1203(c)(3)(B) against Defendant Niu for violating the integrity of the CMI of the Work;

(E) award the Plaintiffs reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 against Defendants; and

(F) award the Plaintiffs reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(5) against Defendant Niu; and

(G) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

Plaintiffs hereby demand a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, June 4, 2021.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper

Kerry S. Culpepper

Attorney for Plaintiff