**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trial Film LLC, *et al.*, | No. CV-21-00984-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Wu Daoai, *et al.*, | |
| Defendants. | |

The Court previously entered a Temporary Restraining Order (TRO) in this matter locking the websites Defendants had used to offer and display by streaming Plaintiffs' copyrighted Work, and temporarily freezing the PayPal and AliPay US accounts Defendants used to collect payments in conjunction with their websites showing the protected Work. (Doc. 16.) In issuing the TRO, the Court set a hearing as required by Rule 65(b)(3), Fed. R. Civ. P., requiring Defendants to appear by telephone on this day to show cause, if any, why the Court should not enter a Preliminary Injunction (PI) continuing the locking of the websites and freezing of the associated payment accounts, pending final ruling on the Complaint. (Doc. 16 at 10.) The Court required Plaintiffs to serve Defendants by July 3, 2021, with the Complaint, Summonses, Second Application for TRO and PI, and Notice of today's PI hearing by email "or any other means authorized under the Federal Rules of Civil Procedure," owing to Defendants' apparent residences overseas and deliberate efforts to avoid identification or contact other than through email accounts associated with the locked websites (Doc. 16 at 10), and required Plaintiffs to file proof of

service on the docket. Plaintiffs complied with the Order, and the Court called the PI hearing to order at 9:30 a.m., Arizona Time, today, July 13, 2021. No Defendant appeared at the hearing, either themselves or through counsel, nor did any Defendant evince any intent to participate. The Court therefore concludes for purposes of evaluating whether a PI should issue mirroring the terms of the TRO in this matter, that Plaintiffs' proffered evidence is unrefuted. The Court repeats that evidence and analysis from the TRO here.

To obtain a temporary restraining order or preliminary injunction, a plaintiff must show that "(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit Court of Appeals, employing a sliding scale analysis, has also stated that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 2877 (2014) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).

### 1. Likelihood of Success on the Merits

Plaintiffs have demonstrated they are likely to succeed on the merits of their copyright claim. They have shown that Plaintiff Trial Film, LLC, is the owner of the copyrights in the Work—the film "Infidel"—and that Plaintiff American Cinema Inspires, Inc. (ACI) is the beneficial owner and sales agent for the licensing and exploitation of Trial Film's exclusive rights in the Work. No Plaintiff has given permission for any of the Defendants to reproduce, display, perform or make derivative use of the Work. Yet the exhibits to the Complaint and second Motion for TRO demonstrate that each of the four Defendants operates at least one website[1] on which the Work is available to stream for free

---

[1] Defendant Wu Daoai aka Bo Ye owns and operates the websites 17ys.net, mmov.cc, 52ys.tv and tvju.tv; Defendant Cheng Hsien Yang owns and operates 17drama.org, 92-tv.com, 92-tv.xyz and 94-tv.xyz; Defendant Yuan Niu owns and operates awsltv.com; and Defendant Doe, aka "Win Double," owns and operates the website msyy.cc. Screenshots

by anyone accessing their websites. Moreover, the Work shown on all four Defendants' websites has been altered to include a Chinese language caption across the bottom of the screen. The original Work is in English with no Chinese subtitles.

Defendants each use domain registrar and hosting services located in Arizona for their websites to host and store the Work.[2] And because the Work bears an embedded notice of copyright protection, for purposes of determining the TRO application, Plaintiffs are likely to be able to show that Defendants knew of such copyrights and intentionally engaged in infringement, or at a minimum, acted with willful blindness to Plaintiffs' registered copyright and exclusive rights or in reckless disregard thereof. Defendants' websites generate revenue for Defendants from marketers and data sellers including Baidu and Google Analytics. Defendants' websites generate cookies on the browsers of all visitors who come to their websites to view movies. This results in the marketers tailoring advertisements to the visitors based on, among other factors, their geographic location, and then compensating Defendants for access to the visitors Defendants have drawn. The compensation flows, Plaintiffs have demonstrated in their attached declarations, from the marketers to Defendants' respective Paypal (Defendants Daoai, Yang and Niu) and AliPay US (Defendant Doe aka "Win Double") accounts, which are linked to the websites.

Additionally, Plaintiffs have demonstrated they are likely to succeed on the merits of their DMCA claim against Defendant Niu under 17 U.S.C. § 1202. Plaintiffs allege in the Complaint, and demonstrate in the exhibits thereto, that Defendant Niu intentionally altered the copyright management information ("CMI") on the Work by removing the listing of Plaintiff CMI as the copyright holder to whom interested parties would direct their inquiries about the Work and the copyright, and replacing it with the website www.458028.com. As this URL has no connection to Plaintiffs, the Court can conclude

---

from each of these websites show the Work streaming. (Complaint, Ex. 2.)

[2] Defendant Daoai/Ye uses NameSilo, LLC as host and registrar for his websites; Defendants Yang and Niu use NameCheap, Inc. for their websites; and Defendant Doe aka "Win Double" uses GoDaddy.com, LLC, as host and registrar for his or her website. GoDaddy, NameCheap and NameSilo all maintain their principal places of business in Arizona.

for purposes of the TRO application that Defendant Nui so altered the CMI with the intent to conceal infringement of the Work by directing inquiries—and therefore knowledge that Defendant Niu was showing the Work—away from the Plaintiffs.

### 2. Irreparable Harm

Plaintiffs also have demonstrated that Defendants' reproduction, alteration, display, and distribution of their Work has resulted in injury to their ability to financially exploit that Work and will continue to result in such immediate and irreparable harm. The Plaintiffs indicate in the attached declarations that distributors and other potential business partners have expressed reluctance to take on the Work, as they are aware it is being shared and displayed for free on Defendants' websites, thus diminishing Plaintiffs' ability to earn a return on their investment.

### 3. Whether Injunction is in the Public Interest

Next, Plaintiffs have demonstrated that the public interest in the protection of copyrighted works is served by an injunction ceasing the infringement of that Work. The Court has no trouble so finding, where the evidence demonstrates the existence of a copyrighted work and Plaintiffs' ownership thereof.

### 4. Balance of Hardships or Equities

Finally, the Court is satisfied that the balance of hardships or equities falls in favor of Plaintiffs as regards the issuance of an injunction locking the websites owned by Defendants that display the copyrighted Work, as well as other named servers that would allow Defendants to simply redirect traffic to alternate websites they might set up to continue to show the copyrighted Work. The Court is aware from the Complaint, Motion and supporting filings that the websites make available many other recorded films for streaming that are neither owned by Plaintiffs nor the subject of this action, and that Defendants' websites' offering for display of some or many of those other recordings may not violate an owner's or licensee's copyright. But counsel's avowal at the *ex parte* hearing in this matter that at least one of his other clients' works were present on several of the websites, in violation of his other client's copyrights, would confirm that the Defendants'

infringement of Plaintiffs' copyrights in the Work here is not isolated or accidental in a collection of otherwise properly displayed works. Moreover, the Court concludes that there is no more narrowly tailored way to halt the irreparable harm to Plaintiffs than to temporarily restrain the websites.

The Court also is satisfied that freezing the Defendants' Paypal and AliPay US accounts linked to their subject websites is justified upon a balancing of the hardships or equities. As the Court previously found in denying Plaintiffs' first TRO request, it lacks the authority to grant an injunction solely to preserve assets for satisfaction of a possible money judgment on a claim that is one at law only, and not in equity. In *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999), the Supreme Court held that a district court has no authority to issue a preliminary injunction to freeze assets pending adjudication of a pure money damages claim because such a remedy was historically unavailable from a court of equity. Put another way, an injunction to freeze assets was authorized only when it was necessary to preserve the possibility of equitable relief. The Ninth Circuit made this limitation clear in *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988).

Upon Plaintiffs' submission of additional authority at the Court's invitation, as well as the Court's own research, the Court recognizes the proscription against asset freezes is not as broad as it previously concluded. First, in *Hilao v Estate of Marcos*, 25 F.3d 1467, 1479 (9th Cir. 1994), the Ninth Circuit considered, in the circumstance of a claim purely at law seeking money damages, whether a preliminary injunction to freeze assets still could be appropriate where the plaintiff showed the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction, making the judgment uncollectible. The court in *Hilao* held that a district court does have the authority to issue a preliminary injunction to freeze assets where a plaintiff can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or because a defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment. *Id.* at 1480.

Second, Plaintiffs cited in their Second Motion for TRO *Amazon Content Servs. LLC v. Kiss Library*, No. 2:20-cv-01048-MJP, 2020 U.S. Dist. LEXIS 155676 (W.D. Wash Aug. 27, 2020), which presents factual circumstances very similar to the instant case and the identical question of law. In *Kiss Library*, the plaintiffs presented a sister district court of this circuit with copyright infringement claims against the operators of substantively identical mirror websites that were reproducing, distributing, and displaying copyrighted works without the permission of the copyright holders, for profit. The plaintiffs sought and received temporary injunctive relief disabling the websites and freezing the defendants' assets. In concluding that an asset freeze was an appropriate component of temporary injunctive relief in a copyright case, the court found in relevant part as follows:

> 6. With regard to the need for injunctive relief to secure assets without notice and expedited discovery to discover Defendants' identities and assets, the Court finds Plaintiffs have provided evidence showing:
>
> a. Defendants have gone to great lengths to conceal their identities, locations, and proceeds from Plaintiffs' and this Court's detection, including using multiple false identities and addresses associated with their operations and purposely deceptive contact information;
>
> b. at least some of the Defendants are likely overseas and Defendant Kiss Library appears to communicate solely through email; and
>
> c. Defendants would likely destroy, move, hide, or otherwise make inaccessible the proceeds of their infringement, copies of infringed Works, and the Websites used to display and distribute those Works, to the Court and Plaintiffs if they received advance notice, thus frustrating the ultimate relief Plaintiffs seek in this action.
>
> 7. Entry of an order other than the requested Order would not adequately achieve the purposes of the Copyright Act to preserve Plaintiffs' equitable remedies for copyright infringement, including among other things: the restraint of

> Defendants' unauthorized sale and distribution of Plaintiffs' Works, including through Defendants' Websites, the acquisition of business records relating to Defendants' operations, and the preservation of Plaintiffs' right to an equitable accounting of proceeds from Defendants' sale of Plaintiffs' Works . . . .

*Kiss Library*, 2020 U.S. Dist. LEXIS 155676 at 6-7. While a decision of a sister district court within this circuit does not constitute binding precedent, the Court concludes Judge Pechman's reasoning has great persuasive value. Like the defendants in *Kiss Library*, Defendants here distributed copyrighted material via remote websites for profit. And like the defendants in *Kiss Library*, Defendants here have gone to great lengths to conceal their identities and locations from Plaintiffs, and are overseas,[3] communicating only via email. Finally, like the circumstances in *Kiss Library*, there is a high likelihood here that Defendants will destroy, hide, move and/or make unavailable the proceeds of their infringement if alerted to this action. These facts drove the court in *Kiss Library* to conclude that an account freeze was appropriately part of the temporary injunctive relief necessary to stop irreparable harm to the plaintiffs. In so finding, Judge Pechman concluded that the assets in the accounts to be frozen were not only proceeds of the copyright violation, but also instrumentalities of it, and without a freeze, the preliminary injunction "would not adequately achieve" its purpose, including "the restraint of Defendants' unauthorized sale and distribution of Plaintiffs' Works . . . ." *Id*.

The Court adopts Judge Pechman's reasoning in its analysis of the present case. If the Court's injunctive relief here is limited to the disabling of the present websites on which Defendants offer the Work, all hallmarks of the structure of Defendants' current operations indicate they simply will deploy those assets to quickly reestablish the infringing distribution schemes on new websites under different names, rendering the injunctive relief a nullity and continuing the irreparable harm to Plaintiffs. In other words, the freezing of

---

[3] Plaintiffs allege upon information and belief, and the contact and website domain name information they submit supports, that Defendants Daoai and Yang reside in Taiwan, Defendant Niu resides in Canada, and Defendant Doe aka "Win Double" resides in the People's Republic of China.

the accounts is necessary to deliver the temporary injunctive relief. The Court therefore finds all factors have been met for granting the temporary injunctive relief Plaintiffs seek. For the same reasons, the Court finds the requirements for a Preliminary Injunction, as set forth in Rule 65(a), Fed. R. Civ. P., and *Garcia* and *Winter* are met.

**IT IS ORDERED** granting Plaintiffs' Request (Doc. 12) converting the Temporary Restraining Order previously entered in this matter to a Preliminary Injunction.

**IT IS FURTHER ORDERED** that domain name registries NameSilo, LLC, NameCheap, Inc., GoDaddy, LLC, and or the individual registrars holding or listing one or more of the domain names used in conjunction with Defendants' websites as listed in Footnote 1 of this Order shall continue to disable these domain names, or any subset of these domain names specified by Plaintiffs, through a registry hold or otherwise, and maintain them as inactive and nontransferable pending further Order of this Court.

**IT IS FURTHER ORDERED** that CloudFlare, Inc. shall continue to refrain from providing any services, including but not limited to content delivery network and Domain Name System service, to Defendants' websites as listed in Footnote 1 of this Order, and maintain its lock on Defendants' CloudFlare accounts to prevent Defendants from frustrating the above domain lock provision by redirecting traffic intended for the disabled website(s) to different websites pending further Order of this Court.

**IT IS FURTHER ORDERED** that PayPal, Inc. shall continue its freeze on all funds associated with the following accounts and continue to restrain and enjoin the transfer of any funds held in such accounts until further ordered by the Court:

- As to Defendant Wu Daoai: 903757528@qq.com, paypal@61bk.com, wudaoai.com@gmail.com, cfbk@61bk.com.
- As to Defendant Cheng Hsien Yang: jm@house108.com.tw, ppt616543@gmail.com, yang1673@gmail.com.
- As to Defendant Yuan Niu: javettejpy@gmail.com, awsltvcom@gmail.com.

**IT IS FURTHER ORDERED** that AliPay US, Inc. shall continue its freeze on all funds associated with the following accounts and continue to restrain and enjoin the transfer of any funds held in such accounts until further ordered by the Court:

- Defendant Doe aka "Win Double": admin@msyy.cc, simonovboleslav@gmail.com, ouba@qq.com, 96461@qq.com, 964672451@qq.com.

**IT IS FURTHER ORDERED** that any United States financial institution or payment provider holding funds for any Defendant in an account linked to be above PayPal or AliPay accounts shall continue its freeze on said funds upon receipt of a copy of this Order, until further Order of the Court.

Dated this 13th day of July, 2021.

Honorable John J. Tuchi
United States District Judge