CULPEPPER IP, LLLC
Kerry S. Culpepper, Hawaii Bar No. 9837, *pro hac vice*
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiffs:
Trial Film, LLC; and
American Cinema Inspires, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trial Film, LLC and American Cinema Inspires, Inc. )<br><br>Plaintiffs, )<br>vs. )<br>Wu Daoai et al., )<br><br>Defendants. )<br>_____ ) | **Case No.: 2:21-CV-984-PHX-JJT**<br>(Copyright)<br><br>**MOTION FOR DEFAULT JUDGMENT; DECLARATIONS OF COUNSEL AND JOSHUA LEE; EXHIBIT "1"; PROPOSED ORDER; CERTIFICATE OF SERVICE** |

## <u>MOTION FOR DEFAULT JUDGMENT</u>

Pursuant to Fed R. Civ. P. 55(b)(2), Plaintiffs Trial Film, LLC ("Trial Film")

and American Cinema Inspires, Inc. ("ACI") (collectively "Plaintiffs") hereby

submit their motion for default judgment on all claims against Defendants Wu

Daoai, Cheng Hsien Yang, Yuan Niu, and Doe a/k/a Win Double (collectively

"Defendants").

## I. INTRODUCTION

Plaintiffs filed the Complaint [Doc. #1] against Defendants on June 4, 2021 seeking injunctive relief and damages against Defendants for direct infringement of Plaintiffs exclusive rights to reproduce the copyright protected movie *Infidel* ("Work"), make derivative copies of the Work, publicly perform the Work and display the Work in violation of 17 U.S.C. § 106.  Plaintiffs further seek relief against Defendant Niu for Digital Millennium Copyright Act ("DMCA") violations pursuant to 17 U.S.C. §1202.

Plaintiff Trial Film, LLC ("Trial Film") is the owner of the copyrights of the Work currently available for sale online and in retails stores.  *See* Complaint [Doc. #1] at ¶82. Plaintiff Trial Film engaged Plaintiff ACI to be the sales agent for licensing and exploiting of Trial Film's exclusive rights in the Work.  *See Id*. at ¶80. Plaintiffs invested significant financial resources, time and effort in making and marketing the Work based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales.  Defendants' illicit conduct of massive piracy of the Work have directly hurt Plaintiffs' ability to rightfully recoup their investments.

Defendants own and operate multiple websites that each reproduces, publicly displays, and publicly performs the Work. *See* Exhibits "2"-"3" to the Complaint

[Doc. ##1-3, 1-4]. Plaintiffs did not authorize, permit, or provide consent to the Defendants to reproduce, perform, or display the Work. *See* Complaint at ¶5.

Personal jurisdiction is appropriate over the Defendants because they purposefully availed themselves of the privileges of conducting business in Arizona. Particularly, Defendants knowingly host their piracy websites on servers of Arizona companies in Arizona as well as registered their domain names with Arizona domain registrars. *See* Complaint at ¶¶6-7, 19-27. Furthermore, Defendants receive financial compensation from advertisements on Defendants' websites from visitors in Arizona and the United States. *See Id*. at ¶14. Specifically, Defendant Doe's website generates cookies for Baidu, Defendant Daoai's websites generate cookies and trackers for Google Analytics to generate advertisements, Defendant Yang's websites generate cookies and trackers for Google Analytics to generate advertisements, and Defendant Niu's websites generate cookies and trackers for chatra.io and crestfallenwall.com and Google Analytics, all to generate advertisements tailored to visitors from Arizona and the United States. *See Id*. at ¶¶15-18.

## II.  ARGUMENT

The Complaint alleges claims for: (1) direct copyright infringement, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 and 501, against all

3

Defendants and (2) violations under the DMCA, 17 U.S.C. §1202, against Defendant Niu.

**A.    Copyright Infringements Have Been Established against Defendants**

A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006).   In the Complaint, Plaintiffs allege that they own the copyrights for the Work and included the Copyright Registration numbers issued by the Register of Copyrights. *See* Exhibit 1 to the Complaint [Doc. #1-2]. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000) (citing 17 U.S.C. § 410(c) (1994)).   Moreover, because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendants infringed upon Plaintiffs' copyrights and that their infringements were knowing and willful. *See* Complaint at ¶¶79-92, 106-115.

**B.    DMCA Violations have been established against Defendant Niu**

17 U.S.C. § 1202(a)(2) states: "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— distribute or import for distribution copyright management information ["CMI"] that is false." 17 U.S.C. §

4

1202(b)(2)-(3) states: "No person shall, without…authority…(2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority…or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority…— knowing, or…having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

To qualify as CMI under the statute, the information must be "conveyed in connection with" copies or displays of the work, "including in digital form"; information in a copyright notice can constitute CMI.  17 U.S.C. § 1202(c).  Here, Defendant Niu altered the reproduction of Plaintiffs' Work to include "www.458028.com", which qualifies as CMI as provided by 1202(c).  *See* Complaint at ¶¶93-98.

Plaintiffs have established that Defendant Niu meets the dual intent standard of section 1202, namely, Defendant Niu's intent to induce, enable, facilitate, or conceal infringement and knowledge of the CMI as required by section 1202(a) or (b). With respect to 1202(b), the standard is "reasonable grounds to know."  17 U.S.C. § 1202(b).  Defendant Niu *knew* the alteration to include the piracy and illegal gambling website "www.458028.com" was without authorization from Plaintiffs and induced, enabled, facilitated, or concealed infringement by directing viewers to illegitimate sources of viewing copyright protected works. *See* Complaint at ¶¶95-

102. Further, Defendant Niu *knew* its streams were illegal by the unauthorized alteration of CMI to include the wording "www.458028.com". *Id*. Defendant Niu *knew* that the wording "www.458028.com" referred to a movie piracy and illegal gambling website. *Id*. Still, Defendant Niu reproduced and publicly performed Plaintiffs' Work with the false CMI with the intent to induce, enable, facilitate, or conceal infringement, in violation of 17 U.S.C. §§ 1202(a)(1), 1202(b)(1), and 1202(b)(3). *Id*. Thus, unlike *Stevens v. CoreLogic*, Plaintiffs have established that Defendant Niu demonstrates a "pattern of conduct" (massive movie piracy) or "modus operandi" (use of a piracy site) that indicates that Defendant Niu knew that the result of its actions would be infringement due to the reference to a piracy website. *Stevens v. CoreLogic*, 899 F.3d 666 (9th Cir. 2018), cert denied, 586 U.S. __ (U.S. Feb. 19, 2019).

D.    Default Judgment is Appropriate

Despite being served with a copy of the Complaint, Defendants failed to appear.  As a result, Plaintiffs requested and received an entry of default. [Docs. ##21, 22].  Because Defendants have chosen to default instead of defending, they have admitted the truth of the allegations asserted in the Complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").  While the court may conduct a hearing

to determine damages, *see* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiffs. *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

Plaintiffs now respectfully request that this Court enter a default judgment against Defendants. When evaluating whether to grant a judgment by default, courts consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). All of these factors support the conclusion that Plaintiffs are entitled to a default judgment.

1.  The possibility of prejudice to Plaintiffs

Plaintiffs would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiffs without any remedy against Defendants, who have failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the fact that Defendants don't deny that Plaintiffs are entitled to an award of statutory damages, attorney's fees, costs, and a permanent injunction, if

this Court refuses to enter a default judgment against him, Plaintiffs would be left unable to seek damages.   Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

2. & 3. Merits of Plaintiffs' substantive claims and sufficiency of the Complaint

Plaintiffs have adequately pled their claims for copyright infringement. In the Complaint, Plaintiffs alleged that they own the copyrights for the Work and included the Copyright Registration Numbers issued by the Register of Copyrights. *See* Exhibit "1" to the Complaint.  Moreover, because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendants infringed upon Plaintiffs' copyrights and that their infringement was both knowing and willful. *See* Complaint at ¶¶79-92, 106-115.

4.   The sum of money at stake in the action

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

5.   The possibility of a dispute concerning the material facts

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendants' default, this Court must take the factual allegations asserted in the Complaint as true. *See TeleVideo Sys., Inc., supra*, 826 F.2d at 917–18.

Moreover, Defendants have not made any attempt to contest those allegations (or for that matter, even bothered to appear).

6.   Whether the default was due to excusable neglect

Defendants' default is not the result of excusable neglect. As discussed above, Defendants were served a copy of the original complaint [Doc. #17].   Thus, Defendants have been provided with notice of this proceeding and the risks for failing to appear.   Accordingly, Defendants' decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7.   The policy considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendants' failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiffs default judgment. Absent a judgment by default, Plaintiffs will not be made whole and have no mechanism to prevent further infringement of their copyrights by these same Defendants.  In summary, as

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

demonstrated above, all of the factors weigh in favor of granting Plaintiffs a default

judgment against Defendants.

### III.    STATUTORY DAMAGES FOR COPYRIGHT INFRINGEMENT

Defendants' conduct has caused damages to Plaintiffs. First, by streaming,

reproducing, displaying, performing, and creating derivative works of the Work

without authorization, Defendants deprived Plaintiffs of their exclusive rights to

control how, when, and to whom they will disseminate their Copyrighted Works.

*See* Decl. of D'Souza at ¶¶8-20; Decl. of O'Shaughnessy at ¶¶5-14. Second, the

availability of free, infringing copies of the Copyrighted Work for unrestricted

streaming inevitably and irreparably undermines the legitimate market in which

consumers can purchase access to the same works. *See Id.* Defendants intentionally

compete with authorized and legitimate offerings, including licensed VOD services

and promotes itself as a means for consumers to avoid the need to pay for those

offerings. *Id.*   Third, the Defendants harmed Plaintiffs' relationships and goodwill

with authorized licensees. *Id.*

Plaintiffs elect to receive maximum statutory damages of $150,000 against

each Defendant for a total of $600,000 for Defendants' infringements of the Work.

Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless

of the adequacy of the evidence offered as to [its] actual damages and the amount of

the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of*

*Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiffs are entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for Defendants' violations of the Copyright Act. 17 U.S.C. §§ 504(c)(1) and (2).

Defendants' infringements are without doubt willful.  This is not a case of an individual using P2P software for her personal consumption such as in *LHF Productions, Inc. v. Unknown Parties, et al.*, Case No. 2:16-cv-01199 in which this Court awarded statutory damages of $15,000.  Defendants are operating a commercial criminal enterprise in which they are knowingly streaming Plaintiffs' Works *to the entire World* for their own profit.

Due to Defendants' default, Plaintiffs were not able to ascertain the complete scope of their profits from their nefarious activities.  However, from account information from PayPal, Plaintiffs know that the PayPal accounts paypal@61bk.com and 903757528@qq.com for Defendant Wu Daoai accumulated $118,035.25 until he promptly transferred the funds out of his account after the DMCA subpoena was served on his domain and server providers.  Also, PayPal account yang1673@gmail.com for Defendant Cheng Hsien Yang accumulated $30,328.23 until he promptly transferred the funds out of his account after the DMCA subpoena was served on his domain and server providers.  Decl. of Counsel

at ¶¶2-4.  These figures provide a snapshot of the profitability of Defendants' piracy activities and their attitude towards Plaintiffs' rights.  They promptly transferred the bulk of the money out of their PayPal accounts when they got wind of potential legal trouble but continued to stream the movie. Id.

In similar cases in the Ninth Circuit where Defendants have contributed to infringements by distributing BitTorrent client apps, Courts have not hesitated to award statutory damages of $30,000 per Work or higher.  In *Columbia Pictures, et. al v. Justin Bunnell et. al*, the Central District of California awarded the Plaintiff a total judgment in the amount of $110,970,000 ($30,000 per Work) against a Defendant for willful inducement of copyright infringement, contributory copyright infringement and vicarious copyright infringement.  *See Columbia Pictures, et. al v. Justin Bunnell et. al*, 2:06-cv-01093-FMC-JCx, Doc. #409 (C.D. Cal.) ("*Bunnell*").  In *Bunnell*, the Defendant operated a website that enabled users to locate and download torrent files.  However, a separate BitTorrent client program had to be used to actually watch the motion pictures associated with the downloaded torrent files. *See Burnell,* 245 F.R.D. 443, 445 (C.D. Cal. 2007).  In that sense, the websites operated by Defendants in the present case are <u>worse</u> than that of the Defendant in *Bunnell* because their websites stream copies of Plaintiffs Work to users in Arizona and the United States without requiring users to use a separate BitTorrent client program.  *See* Complaint at ¶¶90-92.

In *Lions Gate Films Inc. v. Does*, the Central District of California awarded $150,000 in statutory damages jointly against Defendants for willful infringement of the motion picture *Expendables 3* by distributing torrent files from the website limetorrents.com among other websites.  *See Lions Gate Films Inc. v. Does*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, at 3, 6 (C.D. Cal. Aug. 8, 2014), Id. at Doc. 68.  Plaintiffs respectfully assert that the damages in this case are similar to *Lions Gate Films*.  Accordingly, Plaintiffs elect to receive maximum statutory damages of $150,000 against each Defendant for a total of $600,000 for Defendants' willful infringements of the Work.

## IV.    STATUTORY DAMAGES FOR DMCA VIOLATIONS

Plaintiffs elect to receive maximum statutory damages of $25,000 against Defendant Niu for Defendant Niu's DMCA violations, namely knowingly distributing CMI altered to falsely include the wording "www.458028.com" in violation of 17 U.S.C. § 1202(a)(1), (b)(1) and (b)(3).  Pursuant to 17 U.S.C. § 1203(c)(3)(B), Plaintiffs are entitled to an award of "…the sum of not less than $2,500 or more than $25,000" for each DMCA violation.  As explained above, Defendant Niu's conduct is willful and for commercial profit.  Accordingly, Plaintiffs request the maximum amount of $25,000 for Defendant Niu's DMCA violation.

## V.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. See 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).  Plaintiffs respectfully request that this Court grant a permanent injunction enjoining Defendants from continuing to directly infringe and contribute to infringement of Plaintiffs' copyrighted Work.

## VI.   PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND TAXABLE COSTS

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that

courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiffs assert that the following factors support granting its motion for attorney's fees: (1) Plaintiffs' degree of success in the litigation; (2) deterrence; (3) furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's factual and legal components.

A.   The Degree of Success in the Litigation

In this case, Plaintiffs' suit against Defendants was a total success. Plaintiffs alleged that Defendants willfully violated their exclusive rights under the Copyright Act. *See* Complaint at ¶¶79-92, 106-115.

B.   Deterrence

The interest of deterrence weighs in favor of granting Plaintiffs' motion for attorney's fees. Defendants copied, reproduced, redistributed, performed, displayed and made derivative copies of Plaintiffs' Work without authorization for

Defendants' own financial gain. *See* Complaint at ¶¶103-117. Accordingly, the interest of deterrence weighs in favor of fee-shifting.

C.    The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc.*, 499 U.S. at 349-50. Defendants engaged in rampant piracy of Plaintiffs' Work. Thus, Defendants' conduct frustrates the goals of the Copyright Act.

D.    Objective Unreasonableness

The objective unreasonableness of Defendants' conduct also supports fee-shifting. Defendants' failure to appear or otherwise defend prevented Plaintiffs from conducting discovery. Further, Defendants' conduct forced Plaintiffs to file the present motion for default. The unreasonableness of Defendants' conduct during this litigation supports awarding attorney's fees to Plaintiffs.

E.    Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the

litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992) (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

17

483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiffs request the following lodestar amount for attorney's fees it incurred in this case as detailed in the attached Declarations with regards to Defendants:

KERRY CULPEPPER          32 hours @ $350/hour =  $11,200

JOSHUA LEE (Associate)    33.75 hours @ $250/hour = $8,437.50

Additionally, Plaintiffs seeks to recover taxable costs of $886.70.  The taxable costs requested from Defendants include the $402 filing fee for filing the complaint, $484.70 fees to serve Visa, Alipay, Paypal, Community Federal Savings Bank, Cloudflare, and $26.35 to mail documents to the Court.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community.  According to the American Intellectual Property Law Association's *Report of the Economic Survey* (2015), the 2014 mean hourly rate for a solo practitioner specializing in Electrical technologies is $379, higher than Plaintiffs' Counsel's rates. Am. Intellectual Prop. Law Ass'n, *Report of the Economic Survey* (2015), at I-15. Exhibit "1" at pg. 1. Similarly, the 2014 mean hourly rate for an associate attorney at a private firm is $279, higher than Plaintiffs' associate counsel's rates. *Id*. at pg. 2.

## VIII.  **THE COURT SHOULD LIFT THE AUTOMATIC STAY OF PROCEEDINGS TO ENFORCE A JUDGMENT**

Federal Rules of Civil Procedure 62(a) states in part that "…execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise." Plaintiffs respectfully move this court to lift the 30 day stay and order this judgment to be executed immediately. Specifically, Plaintiffs request that Defendants' domains and monetary assets be immediately transferred to Plaintiffs. Since Defendants refuse to engage in these proceedings, Plaintiffs submit that the 30-day stay will only delay the termination of this action. Accordingly, pursuant to FRCP 62(a), Plaintiffs request this court to lift the 30-day stay for execution of judgment upon entry and immediately enforce judgment.

## IV.  **CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court enter default judgment against Defendants and issue an award of statutory damages in favor of Plaintiffs of $625,000, attorneys' fees in the amount of $19,637.50, and taxable costs of $886.70.

DATED: Kailua-Kona, Hawaii, August 13, 2021.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

1

Attorney for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28